```
               UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF CONNECTICUT


- - - - - - - - - - - - - - - - x
                                :  No. 3:15CR-77(SRU)
UNITED STATES OF AMERICA        :  No. 3:15CR-78(SRU)
                                :  No. 3:15CR-79(SRU)
        vs.                     :  No. 3:15CR-80(SRU)
                                :
                                :  915 Lafayette Blvd
BARCLAYS PLC; CITICORP;         :  Bridgeport, Connecticut
JP MORGAN CHASE & CO.; THE      :
ROYAL BANK OF SCOTLAND PLC      :  May 20, 2015
- - - - - - - - - - - - - - - - x
```

                        WAIVERS AND PLEAS


B E F O R E:

    THE HONORABLE STEFAN R. UNDERHILL, U. S. D. J.


A P P E A R A N C E S:


    FOR THE GOVERNMENT:

        U. S. DEPARTMENT OF JUSTICE
            Antitrust Division
            26 Federal Plaza
            New York, New York 10278
        BY:  JOSEPH MUOIO,  Trial Attorney
            BRYAN G. BUGHMAN, Trial Attorney
            ERIC L. SCHLEEF, Trial Attorney
            CARRIE A. SYME, Trial Attorney


    FOR BARCLAYS PLC:

        FINN, DIXON & HERLING
            One Landmark Square, Ste. 1400
            Stamford, Connecticut  06901
        BY:  MICHAEL ENGLISH, ESQ.

        SULLIVAN & CROMWELL LLP
            125 Broad Street
            New York, New York 10004
         BY:  KAREN PATTON SEYMOUR, ESQ.

            MATTHEW FITZWATER, Company Representative

    FOR CITICORP:

            CLEARY, GOTTLIEB, STEEN & HAMILTON
                  One Liberty Plaza
                  New York, New York  10006
            BY:  LEV L. DASSIN, ESQ.
                  JONATHAN S. KOLODNER, ESQ.

            ROHAN WEERASINGHE, Company Representative

    FOR JP MORGAN CHASE & CO:

            ROBINSON & COLE
                  1055 Washington Boulevard, 9th FL
                  Stamford, Connecticut  06901
            BY:  CRAIG A. RAABE, ESQ.

            SKADDEN, ARPS, SLATE, MEAGHER & FLOM
                  4 Times Square
                  New York, New York 10036
            BY:  JOHN K. CARROLL, ESQ
                  PATRICK FITZGERALD, ESQ.

            STEPHEN M. CUTLER, Company Representative

    FOR THE ROYAL BANK OF SCOTLAND GROUP PLC:

            DAY PITNEY
                  242 Trumbull Street
                  Hartford, Connecticut  06103
            BY:  DANIEL E. WENNER, ESQ.

            DAVIS POLK & HARDWELL
                  450 Lexington Avenue
                  New York, New York  10017
            BY:  GREG D. ANDRES, ESQ.
                  NEIL H. MacBRIDE, ESQ.

            JAMES M. ESPOSITO, Company Representative


                  Susan E. Catucci, RMR
                  Official Court Reporter
                  915 Lafayette Boulevard
              Bridgeport, Connecticut  06604
                  Tel: (917)703-0761

 1          (11:00 O'CLOCK, A. M.)

 2          THE COURT:  Good morning.  We're here in four

 3   related criminal cases which have not yet been assigned

 4   docket numbers, although that process has begun.

 5          I'd like to start with the identification of

 6   those present.  So if we could start with counsel for the

 7   government, please, if you could identify yourselves as

 8   well as any representatives who are present, that would be

 9   helpful.

10          MR. MUOIO:  Thank you, Your Honor.  Joseph

11   Muoio, Trial Attorney with the United States Department of

12   Justice, Antitrust Division, in the New York office.

13          Seated with me at counsel table are fellow trial

14   attorneys from the Antitrust Division, Brian Bughman, Eric

15   Schleef and Carrie Syme.  And we're also accompanied by

16   our paralegal, Sharon Robinson.

17          THE COURT:  Very good, thank you.  And let's do

18   this in alphabetical order, so counsel for Barclays.

19          MR. ENGLISH:  Good morning, Your Honor.  Michael

20   English from Finn Dixon & Herling.

21          With me is Karen Patton Seymour of the law firm

22   of Sullivan & Cromwell.

23          MS. SEYMOUR:  Good morning, Your Honor.

24          MR. ENGLISH:  And Matthew Fitzwater of Barclays

25   PLC.

1          THE COURT:  Very good.  Thank you.

2          MR. ENGLISH:  Your Honor, I prepared a written

3    motion for Ms. Seymour pursuant to Rule 83.1.  I can

4    assure Your Honor that Ms. Seymour meets the requirements

5    for admission pro hac vice and I ask that Your Honor admit

6    her for this proceeding.  We will follow up with a written

7    motion as soon as the proceeding ends.

8          THE COURT:  Very good.  That's granted.  Thank

9    you.

10          MR. DASSIN:  Thank you, Your Honor.  Lev Dassin,

11    and from the far left, Jon Kolodner from Cleary Gottlieb,

12    and Rohan Weerasinghe, General Counsel of Citicorp.

13          THE COURT:  Thank you.  Very good.

14          MR. RAABE:  Your Honor, Craig Raabe from

15    Robinson & Cole, along with John Carroll, Patrick

16    Fitzgerald from Skadden Arps.  And Stephen Cutler is the

17    company representative.

18          Like Mr. English, I have written motions for

19    visiting attorneys.  I would ask Mr. Carroll and

20    Mr. Fitzpatrick be admitted for that purpose.  I'll file a

21    motion later.

22          THE COURT:  Yes, that motion is granted.  And

23    just to be clear, you're with JP Morgan Chase?

24          MR. RAABE:  Yes, JP Morgan Chase, yes.

25          THE COURT:  All right, thank you.

1          MR. WENNER:  Good morning, Your Honor.  Dan

2    Wenner from Day Pitney.  With me is Greg Andres from Davis

3    Polk as well as Neil MacBride from Davis Polk, and James

4    Esposito from the Royal Bank of Scotland, PLC.

5          And I would ask Mr. MacBride and Andres be

6    admitted pro hac vice and we'll file the appropriate

7    motions this afternoon.

8          THE COURT:  Yes, that motion is granted.  Thank

9    you.

10         All right.  Let me begin by thanking everyone

11   for agreeing to do this, in effect, in a joint session.  I

12   think it will be much more efficient, and I think by the

13   third or fourth of these I would be kind of in the role of

14   the protagonist of Ground Hog Day later this afternoon.

15   So, it's good to be here together.

16         I think there are substantial similarities among

17   the papers for the four cases and I think we can do this

18   jointly as a result of that.

19         I do want to make sure that everybody is clear,

20   especially government's counsel, when it comes to

21   identifying any distinctions; for example, dates of

22   participation and the like, goal and so forth, that those

23   distinctions be made on a defendant by defendant basis so

24   that we don't have the sense that this is kind of a common

25   proceeding, notwithstanding the nature of the claims here.

1          So, if each of you could be sure to draw those

2     distinctions out on the record, I would be appreciative of

3     that.

4          The way I see us doing this is, much of my role

5     today is advising of certain rights that would be affected

6     by decisions made to plead guilty to any of the

7     informations, to explain certain consequences and to

8     receive acknowledgments of understanding and/or waiver of

9     rights.

10          And so, in essence what I'm going to do whenever

11     I can is to state those rights on the record and then turn

12     to each of the four defendants and ask the appropriate

13     representative, either counsel or a party, to make clear

14     that they understand and acknowledge what I've just said.

15          So, let me begin with various rights that all of

16     the defendants have.  Corporations have somewhat different

17     rights than individuals and so I'm used to talking about

18     Constitutional rights to remain silent.  I don't think

19     that necessarily applies to a corporation but I will tell

20     you you have a practical right not to have to say

21     anything, or even if that's not a constitutional right.

22          All of the corporations have a right, should

23     they begin speaking, to stop speaking and obviously to

24     speak with counsel before making any kind of statement

25     here in court.

1          Everything that is said in court will be taken

2     down for the record and could be used against any of these

3     entities in this or some other proceeding.

4          Each of the corporations has a right to have

5     counsel and to have counsel appointed for them if they

6     cannot afford that right.  That doesn't seem to be a

7     problem today, but I will note that for the record.

8          And I always like to advise defendants that

9     they, there's something called the attorney/client

10    privilege.  I'm sure all of you in this room are aware of

11    that.  Quite simply, what that means is you can feel very

12    comfortable, the client can feel very comfortable speaking

13    with counsel confidentially and obtaining whatever advice

14    they need without fear that that advice or those

15    communications will be disclosed.  So, all of the entities

16    here certainly have a right to the protections of the

17    attorney/client privilege.

18         As a footnote, I would note these microphones

19    are fairly sensitive and, as a result, if you wish to

20    exercise your rights under the attorney/client privilege

21    and have a confidential communication, you may either want

22    to moot them or pull back from the table a bit so you're

23    not picked up, your whispers are not picked up by the

24    microphones.

25         Let me again, in turn, ask each of our sets of

```
1    defendants whether the rights that I've just described

2    are -- you're fully understanding of those rights.

3              MR. FITZWATER:  Yes, Your Honor.

4              MR. WEERASINGHE:  Yes, Your Honor.

5              MR. CUTLER:  Yes, Your Honor.

6              MR. ESPOSITO:  Yes, Your Honor.

7              THE COURT:  All right, excellent.  Thank you.

8              Now, because we're here in connection with

9    corporations, I also want to have each of the corporate

10   representatives acknowledge on the record that they are

11   fully authorized to speak on behalf of the corporation, to

12   waive rights that the corporation possesses in connection

13   with these proceedings and that they have in fact had the

14   necessary internal communications and decisions made to

15   permit them to speak on behalf of each of the corporations

16   here in court today.  Is that correct?

17             MR. FITZWATER:  Yes, Your Honor.

18             MR. WEERASINGHE:  Yes, Your Honor.

19             MR. CUTLER:  Yes, Your Honor.

20             MR. ESPOSITO:  Yes, Your Honor.

21             THE COURT:  Okay.  The first thing I want to do

22   is talk about the decision to proceed by way of

23   information rather than indictment.  Again, with corporate

24   entities, it's a slightly different standard than we

25   usually do, but I will say this.  There are really only
```

two ways in which serious charges can be brought in the
U. S. courts.  One is by way of what is called an
indictment by a grand jury, and the other is by what's
called an information, which necessarily implies or
requires in some circumstances the waiver of a right to
indictment.

I don't believe that corporations have a
constitutional right to indictment but they have a
practical right to indictment.  And this case, these cases
will not proceed unless there is a waiver of the right to
require the government to seek indictments before a grand
jury.

In that connection, I just want to very briefly
note that a grand jury is a group of citizens, between 16
and 23 in number, that they hear evidence presented only
by the government and not by evidence presented by defense
counsel, and they, the grand jury then decides from that
evidence whether there is sufficient probable cause to
believe that a particular entity has committed a crime,
and, if so, and if at least 12 of those grand jurors vote
to return an indictment, then a charge can be brought.

Unless 12 or more of these grand jurors vote to
return an indictment, an indictment cannot be brought and,
therefore, unless there is a waiver of indictment and the
consent to having charges brought by way of what's called

1    an information, then those charges will not be brought,

2    quite simply.

3            An information is a document very much like an

4    indictment.  The very important difference is that an

5    information is a document that has been prepared by a

6    prosecutor and has not been reviewed by a grand jury.  And

7    if this case proceeds by way of the filing of the

8    informations against these entities, no grand jury will

9    ever hear evidence against any of them and no grand jury

10   will ever be asked to make a decision whether to indict or

11   not to indict these entities.

12           Instead, the case will simply proceed as if the

13   entities had been indicted because the informations would

14   be the equivalent of an indictment.  Again, let me just

15   ask each of the corporate representatives if they

16   understand what a grand jury is, the right to require the

17   government to seek to bring these charges by way of the

18   return of an indictment by a grand jury, and whether each

19   corporation wishes to waive those rights and proceed by

20   way of the filing of an information.

21           MR. FITZWATER:  Yes, Your Honor.

22           MR. WEERASINGHE:  Yes, Your Honor.

23           MR. CUTLER:  Yes, Your Honor.

24           MR. ESPOSITO:  Yes, Your Honor.

25           THE COURT:  All right.  And let me just pause.

1      Do any of the corporate representatives have any questions

2      about what's been raised so far?

3                  MR. FITZWATER:  No, Your Honor.

4                  THE COURT:  All right, very good.  If the

5      government hasn't already done so, this would be a good

6      time to file the original informations.

7                  (Hands Clerk)

8                  THE COURT:  Very good, thank you.  Okay.  The

9      next thing I want to do is make sure that each of the

10     corporate representatives has received, reviewed and had a

11     chance to discuss with counsel the document called an

12     information in your respective cases.

13                 MR. FITZWATER:  Yes, Your Honor.

14                 MR. WEERASINGHE:  Yes, Your Honor.

15                 MR. CUTLER:  I have, Your Honor.

16                 MR. ESPOSITO:  I have, Your Honor.

17                 THE COURT:  Hopefully then all of you

18     understand, although there are some distinctions that I

19     may ask Mr. Muoio to review, the essence of each of these

20     informations is that the respective defendants are charged

21     with a violation of Section 1 of the Sherman Act by way of

22     conspiracy; specifically charged with a conspiracy to

23     restrain trade by manipulating the market in foreign

24     exchange currency trade, specifically the FX Spot Market.

25     Is that, Mr. Muoio, is that a fair summary?

1          MR. MUOIO:  Specifically in the Euro/Dollar

2     currency trade, Your Honor.

3          THE COURT:  All right, very good.

4          Again, do each of the corporate defendants

5     understand the general nature of the charge set forth in

6     the respective informations?

7          MR. FITZWATER:  Yes, Your Honor.

8          MR. WEERASINGHE:  Yes, I do, Your Honor.

9          MR. CUTLER:  Yes, Your Honor.

10         MR. ESPOSITO:  I do, Your Honor.

11         THE COURT:  Do any of you have any questions

12    about the charges that are set forth in the respective

13    informations?

14         MR. FITZWATER:  No.

15         MR. WEERASINGHE:  No.

16         MR. CUTLER:  No.

17         MR. ESPOSITO:  No.

18         THE COURT:  I want to be sure that each

19    corporate representative understands the maximum penalties

20    that would apply and potentially be imposed upon your

21    respective corporations in the event that there is a

22    guilty plea entered with respect to the information, the

23    charge in the information.

24         First off, with respect to each of these cases,

25    there -- the principal punishment is a period of probation

of between one and five years, along with the possibility

of a fine.  The maximum fine in these situations are the

greater of the following:  1 million-dollars, or twice the

gain obtained as a result of the wrongful conduct, or

twice the loss suffered by the victims of the wrongful

conduct.

There is the possibility of restitution,

although, as I'm sure you're aware, there has been an

agreement that restitution would not be paid in this case,

these cases, and each corporation would be required, if

found guilty, to pay a special assessment of $400 on the

count of conviction.

MR. MUOIO:  Your Honor, one correction?

THE COURT:  Yes.

MR. MUOIO:  The maximum penalty is the greater

of 100 million-dollars or twice the gain or loss.

THE COURT:  Okay.  Those zeros are important,

aren't they?  Thank you very much.  The number seemed

small to me.

All right.  With that correction, do each of the

corporate representatives understand the maximum

penalties?

MR. FITZWATER:  Yes, Your Honor.

MR. WEERASINGHE:  Yes, I do, Your Honor.

MR. CUTLER:  Yes, Your Honor.

1          MR. ESPOSITO:  Yes, Your Honor.

2          THE COURT:  Very good.  Thank you.

3          All right.  I want to now explain for each of

4     you the various rights that you'd be giving up in the

5     event that your company decides to plead guilty to the

6     charge in your respective information.

7          And the first thing I want to do is make sure

8     that each corporate representative understands that your

9     company is not required to plead guilty even if it

10    committed the crime that's been charged against it.  You

11    have the right, even if you are actually guilty, to plead

12    not guilty and, by doing so, you place on the government

13    the burden of taking this case to trial and proving to an

14    unanimous jury of 12 that you've been proven guilty to a

15    standard of beyond a reasonable doubt.

16         And the way that you impose that burden on the

17    government is simply by saying not guilty when you are

18    asked how it is that you plead.  If you plead not guilty,

19    that is if your corporation pleads not guilty -- I'll

20    probably say "you" frequently and when I'm doing that, I'm

21    not talking about you individually but, rather, you as

22    corporate representatives and the "you" refers to the

23    corporations that you represent -- but if the corporations

24    plead guilty, they are entitled to a speedy public trial

25    before a jury with the assistance of counsel in defending

1    against the charges in the information.

2              At trial, each of these entities would be

3    presumed innocent and the government would have to

4    overcome that presumption using competent evidence and

5    would be required to prove the guilt of each of these

6    corporations separately and to a standard of beyond a

7    reasonable doubt.  None of the corporations would be

8    required to prove that they are innocent.

9              And if the government were to fail to prove the

10   guilt of a particular corporation beyond a reasonable

11   doubt, then the jury would have a legal duty to find that

12   corporation not guilty.

13             During the course of a trial, witnesses for the

14   government would be required to come here into open court

15   and to testify under oath and in the presence of your

16   representatives.  You would have, through your counsel you

17   would have the right to confront those witnesses, that is,

18   you could ask them questions either to show they are not

19   telling the truth or bring out information that might be

20   helpful to your defense.

21             You'd have the right to object to evidence

22   offered by the government.  And you'd have the right to

23   present evidence in defense of these charges and that

24   evidence can include the testimony of witnesses.

25             Obviously representatives from the corporations

 1   would be allowed to testify at such a trial, and they

 2   would also have the power and ability to compel the

 3   attendance of reluctant witnesses.  So if there are

 4   witnesses who don't want to come to trial for whatever

 5   reason and they are within the subpoena power of the

 6   Court, each of these entities would have the authority and

 7   ability to compel their attendance by serving them with a

 8   subpoena, which is quite simply a form of court order, to

 9   come to court and give testimony.

10          Do each of you understand the rights that I've

11   just described?

12          MR. FITZWATER:  Yes, Your Honor.

13          MR. WEERASINGHE:  I do, Your Honor.

14          MR. CUTLER:  Yes, Your Honor.

15          MR. ESPOSITO:  I do, Your Honor.

16          THE COURT:  And do each of you understand that

17   these are rights that you'll enjoy if your entity pleads

18   innocent, persists in that plea and goes to trial, but

19   they are rights that you will give up, or waive, simply by

20   pleading guilty to the charge in the information?

21          MR. FITZWATER:  Yes, Your Honor.

22          MR. WEERASINGHE:  I do, Your Honor.

23          MR. CUTLER:  Yes, Your Honor.

24          MR. ESPOSITO:  Yes, Your Honor.

25          THE COURT:  Any questions or concerns about the

```
 1   rights that would be given up in the event of a guilty

 2   plea?

 3              MR. FITZWATER:  No.

 4              MR. WEERASINGHE:  No.

 5              THE COURT:  Okay.  I want to make sure also that

 6   each of you understand that in the event that you plead

 7   guilty on behalf of your corporation, that that's going to

 8   end the question of guilt or innocence of the corporation.

 9   So, in the event that there's a sentence imposed that you

10   think is unfair, you're not going to be allowed for that

11   reason to withdraw the guilty plea and ask for a trial at

12   that point.

13              Do each of you understand that?

14              MR. FITZWATER:  Yes, Your Honor.

15              MR. WEERASINGHE:  Yes, sir.

16              MR. CUTLER:  Yes, Your Honor.

17              MR. ESPOSITO:  Yes, Your Honor.

18              THE COURT:  All right.

19              MR. MUOIO:  Your Honor, if I may, I just wanted

20   to point out that the sentence is pursuant to 11(c)(1)(C),

21   so so far as they may not think the sentence is fair, it

22   would be --

23              THE COURT:  Well, no, I'm going to go through

24   that.

25              MR. MUOIO:  Okay.
```

1          THE COURT:  No, fair enough.  When we get to --

2     my thought was when we get to the plea agreement, that I

3     would go through that.

4          MR. MUOIO:  Absolutely.

5          THE COURT:  Because that's obviously a footnote

6     to the waiver.

7          And actually that's a good point because I just

8     said if the sentence is unfair.  I understand your point.

9     Okay, let me point that out now.

10         The proposed plea agreement that I've seen

11    suggests that these sentences are going to be imposed

12    pursuant to a Federal Rule of Criminal Procedure

13    11(c)(1)(C).  That rule provides in effect that the

14    parties can agree to an appropriate sentence and that the

15    Court then makes a decision whether to accept or reject

16    that sentence, but doesn't have really much wiggle room to

17    do something other than what the parties have agreed.

18         In the event that the Court is unable to agree

19    to this sentence and, therefore, rejects the plea

20    agreement, then the party, the defendant who has entered

21    into that plea agreement, has the right to withdraw the

22    guilty plea under those circumstances.

23         Do each of you understand that clarification of

24    what I said earlier?

25         MR. FITZWATER:  Yes, Your Honor.

1          MR. WEERASINGHE:  Yes, Your Honor.

2          MR. CUTLER:  Yes, Your Honor.

3          MR. ESPOSITO:  Yes, Your Honor.

4          THE COURT:  All right, very good.

5          You, notwithstanding pleading guilty, you would

6     ordinarily retain the right to appeal your sentence, that

7     is, the sentence imposed on the corporation.  Again, in

8     the plea agreement there is a waiver of the right to

9     appeal or collaterally attack both the conviction and the

10    sentence, other than for ineffective assistance of your

11    counsel, so in the event that you enter guilty pleas on

12    behalf of your entities and do that pursuant to the

13    proposed plea agreements that I've seen, then as a

14    practical matter the case will be over regarding both the

15    conviction and sentence of these entities, unless I later

16    reject the plea agreement.

17         Do each of you understand that?

18         MR. FITZWATER:  Yes, Your Honor.

19         MR. WEERASINGHE:  Yes, Your Honor.

20         MR. CUTLER:  Yes, Your Honor.

21         MR. ESPOSITO:  Yes, Your Honor.

22         THE COURT:  All right, very good.

23         All right.  Let's turn then to the four draft

24    plea agreements, and I'd like to start by making sure from

25    each of you that the proposed plea agreements have been

```
 1    reviewed both with counsel and with -- and have been

 2    reviewed and approved by any necessary internal bodies,

 3    Board of Directors, committees, other executives, so that

 4    each of the entities here has had a full and fair

 5    opportunity to review and consider and decide whether to

 6    enter into these written plea agreements.  Is that the

 7    case?

 8              MR. FITZWATER:  Yes.

 9              MR. WEERASINGHE:  Yes, Your Honor.

10              MR. CUTLER:  Yes, Your Honor.  I would just say

11    that what was shared with our authorizing body was

12    something substantially in the form of the draft that is

13    now before the Court.

14              THE COURT:  Very good.  There have been some

15    minor changes --

16              MR. CUTLER:  Yes.

17              THE COURT:  -- but anything that you believe is

18    material?

19              MR. CUTLER:  No.

20              THE COURT:  Very good.

21              MR. ESPOSITO:  Yes, Your Honor.

22              THE COURT:  Okay.  All right.  What I'd like to

23    do is ask Mr. Muoio to summarize the common provisions of

24    these plea agreements and point out on an individual basis

25    for each defendant that has anything somewhat different
```

1    from the standard or common language, so that each of the

2    defendants is apprized of the specifics of what's set

3    forth in their specific plea agreement.

4              I'm going to ask each of you to listen carefully

5    because then I'm going to ask the corporate

6    representatives whether the summary or the description

7    that's rendered by Mr. Muoio is consistent with your

8    understanding of what the plea agreements say.

9              MR. MUOIO:  Thank you, Your Honor.

10             The parties have entered into binding agreements

11   pursuant to 11(c)(1)(C), as we said.  The agreement

12   recites the various Constitutional rights they have,

13   provides for waiver of various rights acknowledgments,

14   that the banks are, in effect, guilty and the plea is

15   voluntary.

16             The plea agreements separately call for separate

17   fines.  In the case of Barclays PLC, it is a fine of 650

18   million dollars; in the case of Citicorp, it is

19   925 million-dollars; in the case of J P Morgan Chase &

20   Company, it is 550 million-dollars, and; in the case of

21   the Royal Bank of Scotland PLC it is 395 million-dollars.

22             In addition, for Barclays it calls for an

23   additional penalty of 60 million-dollars based on conduct

24   that violated a 2012 non-prosecution agreement with the

25   Criminal Division, Fraud Section, of the U. S. Department

1    of Justice regarding benchmarked interest rates, including

2    at the London InterBank Offered Rate, LIBOR.

3            More detail about the non-prosecution agreement

4    is laid out in paragraphs 9 to 11 of the Barclays plea

5    agreement.

6            All of the banks will pay a special assessment

7    of $400.

8            In light of the availability of civil causes of

9    action which potentially provide up to treble damages and

10   joint and several liability, the recommended sentence does

11   not include an order of restitution.

12           The plea agreement calls for a probationary term

13   of three years in all cases.  The general outline of those

14   probationary terms contained in the plea agreements

15   indicate that the Bank will not commit further crimes,

16   they will not -- that the Bank will promptly post on its

17   website certain disclosure related to other related

18   conduct that's identified in relevant paragraph of the

19   respective plea agreements.

20           The Banks will notify the probation office upon

21   learning of the commencement of any federal criminal

22   investigation as a target, and federal criminal

23   prosecutions.  It will implement compliance programs and

24   it will provide annual reports to probation.

25           They will report credible information regarding

1    criminal violations of specified sort to the Antitrust

2    Division and to the Fraud Section of the Criminal

3    Division.

4           They call for cooperation by the Banks with

5    respect to both the charged conduct and with respect to

6    investigations of other currency pairs and other

7    FX-related products.

8           They also call for cooperation with respect to

9    investigations related to the conduct identified as "other

10   relevant conduct."  And other conduct -- and other

11   investigations still that are identified in the

12   attachments that the government would like to ultimately

13   move for sealing of those attachments; A for all of the

14   Banks and there's also an Attachment B in the case of

15   Barclays.

16          The plea agreements call for non-prosecution

17   protection with respect to no further prosecution for the

18   charged conduct, and also no prosecution for price fixing

19   and bid rigging conduct with respect to other currency

20   pairs and other products that are identified in the plea

21   agreements.

22          It also provides for no criminal prosecution

23   with respect to the other relevant conduct that's

24   identified.

25          In the case of Barclays, there is the specific

1   exemption of one investigation.  I believe I indicated

2   that in a separate Attachment B from their cooperation

3   obligation.

4          And I think that is about it for most of the key

5   terms, Your Honor.

6          THE COURT:  Okay.  It might be helpful to set

7   forth briefly a summary of the conduct that the government

8   believes would make each of these four defendants liable

9   for the charges that have been filed.

10          MR. MUOIO:  Absolutely.

11          The government would prove, between both

12   witnesses and documentary evidence, that the FX market,

13   being a multi-trillion dollar global market in which

14   participants bought and sold and traded currencies against

15   one another in pairs, including the Euro/Dollar currency

16   pair, which is the most traded currency pair by volume;

17   that these Banks' financial service firms were acting as

18   dealers in the United States and elsewhere for the

19   currency traded in the FX Spot Market.

20          During the relevant period, defined in the plea

21   agreement as at least as early as December 2007 and

22   continuing until at least January 2013, the Banks and

23   their corporate coconspirators entered into and engaged in

24   a combination and conspiracy to fix, stabilize, maintain,

25   increase or decrease the price of and rig bids and offers

1     for the Euro/Dollar currency pair exchanged in the foreign

2     exchange Spot Market by agreeing to eliminate competition

3     for the purchase and sale of the Euro/Dollar currency pair

4     in the United States and elsewhere.

5          The Banks did this through one of its

6     Euro/Dollar traders.  It knowingly participated in the

7     conspiracy from, in the case of Barclays, at least as

8     early as December 2007 until at least August 2012.  In the

9     case of Barclays, there is actually a second trader that

10    engaged in the conduct.  Citicorp, from at least as early

11    December 2007 to at least January 2013; for JP Morgan

12    Chase & Company, at least as early as July 2010 until at

13    least January 2013, and; for the Royal Bank of Scotland

14    PLC, at least as early as December 2007 until at least

15    April 2010.

16          In furtherance of the conspiracy, the Bank and

17    its conspirators engaged in communications, including

18    nearly daily conversations, some of which were in code, in

19    an exclusive electronic chat room, in which chat room

20    participants, as well as others in the FX Spot Market, are

21    referred to as the "Cartel" or the "Mafia."

22          The Bank and co-conspirators carried out the

23    conspiracy to eliminate competition in the purchase and

24    sale of Euro/Dollar currency pair by various means and

25    methods, including in certain instances by coordinating

1    the trading of Euro/Dollar currency pair in connection

2    with European Central Bank and World Market/Reuters

3    benchmark fixes, currency fixes, which occurred at 2:15

4    Central European Time, and 4:00 British Mean Time, each

5    trading day; two, refraining from certain trading behavior

6    by withholding bids and offers, and one co-conspirator

7    held an open risk position so that the price of the

8    currency traded would not move in a direction adverse to

9    the conspirator in the open risk position.

10          And during the relevant period, each of the

11   Banks purchased and sold substantial quantities of

12   Euro/Dollar currency pair in a continuous and

13   uninterrupted flow of interstate and U. S. import trade

14   and commerce, and in purchases and sales of Euro/Dollar

15   currency pair within the flow of and substantially

16   affected interstate, U. S. and foreign trade and commerce.

17          The conspiracy had a direct effect on trade and

18   commerce of the United States, as well as on U. S. trade

19   and commerce and was carried out in part within the

20   District of Connecticut and elsewhere in the United

21   States.  Acts in furtherance of the conspiracy were

22   committed in the District of Connecticut and elsewhere.

23          THE COURT:  All right, thank you.

24          Let me ask each of the corporate representatives

25   whether they understand and agree with the summary of the

1       of their respective plea agreements that was just provided

2       by Mr. Muoio

3                   MR. FITZWATER:  Yes, I do, Your Honor.

4                   MR. WEERASINGHE:  Yes, I do, Your Honor.

5                   MR. CUTLER:  Yes, sir.

6                   MR. ESPOSITO:  Yes, Your Honor.

7                   THE COURT:  All right.  Okay.  I wanted to go

8       over a couple things and just make sure that we're all on

9       the same page.

10                  There is a provision in each of these agreements

11      that I mentioned earlier, but it is important and that is

12      a waiver of your right to file any appeal or collateral

13      attack or other writ or motion that would challenge either

14      the conviction or the sentence so long as the recommended

15      sentence or a lesser sentence is imposed by the Court.

16                  There are also three elements of the charged

17      offense.  First, that the conspiracy to restrain trade as

18      set forth in the respective informations existed at the

19      time alleged; that each defendant knowingly became a

20      member of the conspiracy, and; that the conspiracy alleged

21      in the information substantially affected interstate

22      commerce or the import of goods into and out of the United

23      States.

24                  Do each of you understand the waiver I described

25      and the elements that I just described?

1          MR. FITZWATER:  Yes, Your Honor.

2          MR. WEERASINGHE:  Yes, Your Honor.

3          MR. CUTLER:  Yes, Your Honor.

4          MR. ESPOSITO:  I understand, Your Honor.

5          THE COURT:  Very good.  There's reference in the

6     plea agreements to the sentencing guidelines.  The

7     sentencing guidelines are in essence a body of -- how do

8     you describe the sentencing guidelines.

9          Let me put it this way:  They require judges to

10    consider certain information and as a result of that

11    information, can make calculations, get advice about how

12    to sentence a particular defendant, and I'm required to

13    consider the sentencing guidelines.

14         I want to make sure that each of you have had

15    discussions with your counsel regarding the existence and

16    effect of the sentencing guidelines in your particular

17    case.

18         MR. FITZWATER:  Yes, I have, Your Honor.

19         MR. WEERASINGHE:  Yes, I have, Your Honor.

20         MR. CUTLER:  Yes, Your Honor.

21         MR. ESPOSITO:  Yes, Your Honor.

22         THE COURT:  Very good.  In the case of Barclays

23    there's some provisions in the plea agreement that relate

24    to the non-prosecution agreement.  Mr. Muoio touched on

25    those somewhat.  I just want to make sure that you have

1    read and understand and agree with those, in effect,

2    additional provisions.

3          MR. FITZWATER:  Yes, I have, Your Honor.

4          THE COURT:  Very good.  Because this is an

5    11(c)(1)(C) agreement, it is important that each of the

6    defendants understand what has been defined as the

7    recommended sentence.  I think we've gone over that but I

8    want to make sure that if any of you have any questions

9    about what the recommended sentence is, that you raise

10   them now because it's going to be, it's going to be there

11   and affecting this case if we don't raise it at this

12   point.

13          Do any of you have any questions or concerns

14   about the recommended sentence?

15          MR. FITZWATER:  No, Your Honor.

16          MR. WEERASINGHE:  No, Your Honor.

17          MR. CUTLER:  No, Your Honor.

18          MR. ESPOSITO:  No, Your Honor.

19          THE COURT:  And I want to be sure that the pleas

20   that are reflected by the written plea agreements in each

21   of these four cases are the voluntary act of each of the

22   defendants, and that there have been no threats or efforts

23   to intimate any of these defenders into entering into the

24   plea agreement or into pleading guilty today.  Is that the

25   case?

```
1              MR. FITZWATER:  Yes, Your Honor.

2              MR. WEERASINGHE:  Yes, Your Honor.

3              MR. CUTLER:  Yes, Your Honor.

4              MR. ESPOSITO:  Yes, Your Honor.

5              THE COURT:  I also want to make sure, as set

6       forth in writing, that -- in each of these agreements,

7       that the written plea agreement, as well as the

8       attachments thereto, constitute the entire agreement

9       reached between each of the defendants and the government

10      concerning the defendants' decisions to plead guilty

11      today.

12              So I want to have you confirm that there is no

13      other statement or representation that your company is

14      relying upon in deciding to enter into the plea agreement

15      or into pleading guilty today, other than what's been put

16      down in writing.

17              MR. FITZWATER:  That is correct, Your Honor.

18              MR. RICCIO:  That is correct.

19              MR. CUTLER:  Yes, Your Honor.

20              MR. ESPOSITO:  That is correct, Your Honor.

21              THE COURT:  Very good.  And then, finally, the

22      plea agreement requires the posting of a disclosure notice

23      publicly.  Each of the plea agreements has a draft or --

24      not a draft, but a disclosure notice that is written with

25      respect to each of the individual corporations.
```

```
1              Have each of you had a chance to review and

2       discuss the disclosure notice, and are you satisfied that

3       it accurately reflects actual facts regarding your

4       corporation's involvement in this scheme?

5              MR. FITZWATER:  Yes, Your Honor.

6              MR. WEERASINGHE:  Yes, Your Honor.

7              MR. CUTLER:  Yes, Your Honor.

8              MR. ESPOSITO:  Yes, Your Honor.

9              THE COURT:  Do any of you have any questions or

10      concerns about the proposed plea agreements that you'd

11      like to raise at this time?

12             MR. FITZWATER:  No, Your Honor.

13             MR. WEERASINGHE:  No.

14             (Pause)

15             THE COURT:  Mr. Cutler, do you have a concern?

16             MR. CUTLER:  No, Your Honor.

17             MR. ESPOSITO:  No, Your Honor.

18             THE COURT:  All right, very good.  I'd like

19      briefly to have each of the corporate representatives

20      focus on the elements and confirm my understanding that

21      each of these entities is admitting each of the essential

22      elements of this offense, specifically that the conspiracy

23      described in the information existed, that each of the

24      respective defendants knowingly became a member of the

25      conspiracy, and that the conspiracy meets the
```

1    jurisdictional requirement of affecting interstate or

2    foreign commerce.

3              MR. FITZWATER:  Yes, Your Honor.

4              MR. WEERASINGHE:  Yes, Your Honor.

5              MR. CUTLER:  Yes, Your Honor.

6              MR. ESPOSITO:  Yes, Your Honor.

7              THE COURT:  Mr. Muoio, do you want me to

8    actually -- do you want me to inquire any further from any

9    defendant regarding their understanding or agreement with

10   either the plea agreement or the notice of disclosure?  Or

11   do you want to comment any further regarding their

12   commission of the elements of the offense?  Are you

13   satisfied with the colloquy?

14             MR. MUOIO:  I think we're fine, Your Honor.

15             THE COURT:  Very good.  There is one other

16   point, it's a minor point but it's in -- the plea

17   agreements all provide that the probation office will not

18   be preparing what's known as a presentence report

19   regarding these defenders.

20             Normally a presentence report is a comprehensive

21   report that the Court receives that describes information

22   that may be helpful to sentencing, or in this case, that

23   may be helpful in deciding whether to accept the

24   recommended sentence or not.

25             Each of these agreements waives the preparation

1   of that document and I want to make sure that no one has

2   any concerns about that provision of the plea agreement.

3            MR. FITZWATER:  I have no concerns, Your Honor.

4            MR. WEERASINGHE:  I have no concerns, Your

5   Honor.

6            MR. CUTLER:  Same here, Your Honor.

7            MR. ESPOSITO:  I have no concerns, Your Honor.

8            THE COURT:  All right.  One last kind of

9   logistical issue.  Mr. Muoio, You said at some point

10  you're going to ask to seal attachments to the plea

11  agreements?

12           MR. MUOIO:  That is correct, Your Honor.

13           THE COURT:  I'm happy to provisionally order

14  those attachments be sealed.  It would be helpful to get a

15  formal motion at some point.

16           MR. MUOIO:  We do have motions and they are

17  unopposed motions and we're happy to hand them up now or

18  to do it at the conclusion of the proceeding.

19           THE COURT:  Let's do it at the conclusion, but

20  understand that I'll be granting those motions to seal at

21  least until I have a chance to review the substance of the

22  attachments there.

23           Okay.  Unless anyone thinks we ought to do any

24  further discussion, I think we're ready to accept pleas

25  from each of the defendants.  Is there anyone who has any

```
 1     questions or concerns before we turn to the formal pleas?

 2               (Pause)

 3               THE COURT:  All right.

 4               MR. MUOIO:  I do have one other housekeeping

 5     matter, Your Honor.

 6               THE COURT:  Yes.

 7               MR. MUOIO:  And that is we also will be

 8     submitting a motion for alternative means for notifying

 9     victims.

10               THE COURT:  Yes.

11               MR. MUOIO:  They have been served upon the

12     defendants.  I'm not sure I can quite represent that they

13     are unopposed, but they call for providing notice via a

14     website and via contacting class action plaintiff's

15     counsel about any future proceedings, and we would like to

16     ultimately hand that up as well today.

17               THE COURT:  That's fine.  I don't think that

18     requires action today though.

19               MR. MUOIO:  It does not, Your Honor.

20               THE COURT:  Very good.  Okay.  All right.

21     Unlike everything else today, we're going to do this one

22     at a time and we'll do this in alphabetical order.

23               So I would ask the corporate representative from

24     Barclays please to stand and to be put to plea, or put his

25     entity to plea.
```

1          THE CLERK:  In the case of United States v.

2     Barclays PLC, Criminal Number 3:15CR-77 SRU, as to the

3     information charging you with the violation of Title 15,

4     United States Code Section 1, what is your plea?

5          MR. FITZWATER:  Guilty.

6          THE CLERK:  Your Honor, the defendant pleads

7     guilty to Count One of the information.

8          THE COURT:  Thank you.  Thank you, you may be

9     seated.  Let's turn next to Citicorp.

10          THE CLERK:  In the case of United States v.

11     Citicorp, Criminal Number 3:15CR-78 SRU, as to Count One

12     of the information charging you with a violation of Title

13     15, United States Code, Section 1, what is your plea?

14          MR. WEERASINGHE:  The Company pleads guilty.

15          THE CLERK:  Your Honor, the defendant pleads

16     guilty to Count One of the information.

17          THE COURT:  Thank you.  JP Morgan Chase &

18     Company.

19          THE CLERK:  In the case of United States v. JP

20     Morgan Chase & Company, Criminal Number 3:15CR-79 SRU, as

21     to Count One of the information charging you with a

22     violation of Title 15, United States Code, Section 1, what

23     is your plea?

24          MR. CUTLER:  Guilty.

25          THE CLERK:  Your Honor, the defendant pleads

1    guilty to Count 1 of the information.

2              THE COURT:  Thank you.  And now the Royal Bank

3    of Scotland PLC.

4              THE CLERK:  In the case of the United States v.

5    Royal Bank of Scotland PLC, Criminal Number 3:15CR-80 SRU,

6    as to Count One of the information charging you with a

7    violation of Title 15, United States Code, Section 1, what

8    is your plea?

9              MR. ESPOSITO:  The Company pleads guilty.

10             THE CLERK:  Your Honor, the defendant pleads

11   guilty to Count One of the information.

12             THE COURT:  Thank you.  It is the finding of the

13   Court in the cases of United States v. Barclays PLC,

14   United States v. Citicorp, United States v. JP Morgan

15   Chase & Company, and United States v. Royal Bank of

16   Scotland Group, PLC, that each of the defendants is,

17   through the corporate representatives, is fully authorized

18   and capable of entering informed pleas, that the

19   defendants are aware of the nature of the charge and the

20   consequences of the pleas, and the pleas of guilty are

21   knowing and voluntary pleas supported by independent basis

22   in fact satisfying each of the essential elements of these

23   informations.

24             The pleas to the four respective informations

25   are, therefore, accepted and the defendants are

```
1    adjudicated guilty of those offenses.  Findings of guilty

2    shall enter and this case will be set down for sentencing

3    at an appropriate time; my understanding being that the

4    parties would like to schedule a sentencing at some future

5    date, at present uncertain.

6               MR. MUOIO:  That is correct, Your Honor.  There

7    is need for regulatory waiver and there's a provisional

8    plea agreement that calls for the potential continuance of

9    any sentencing until a later date.

10              THE COURT:  Very good.  I assume that everybody

11   would like to have the four plea agreements docketed

12   today, is that correct?

13              MR. ENGLISH:  Yes.

14              THE COURT:  Is that --

15              MR. MUOIO:  Yes, Your Honor.

16              THE COURT:  Any objection to doing that?

17              MR. CARROLL:  No objection, Your Honor, no.

18              MR. WENNER:  No objection.

19              THE COURT:  All right.  Those four plea

20   agreements will be docketed.  I think it's important that

21   we get those signed up.  I don't know if they've already

22   been signed.  I've seen only a draft.

23              MR. MUOIO:  We have signed originals here, Your

24   Honor.

25              THE COURT:  Very good.  All right, so after the
```

1    proceeding if you could just hand up the signed originals,

2    we'll get those docketed.

3         All right.  I think the only other thing that I

4    wanted to mention is that because this is a 11(c)(1)(C),

5    these are 11(c)(1)(C) pleas, I need some basis for

6    undertaking the determination whether to accept these

7    pleas or not at the appropriate time.

8         We don't have, as I noted before, a presentence

9    report that's going to be written and so I won't have that

10   available to me.  So it's going to be important, if

11   possible, to have some form of presentation of the

12   parties' respective viewpoints regarding whether this is,

13   the recommended sentences are, in fact, appropriate and,

14   if so, why.  I'm assuming there's agreement on that but it

15   would be helpful to have some information, more than I

16   currently have, that will allow me to make that

17   determination.

18        So, at some point it may make sense to have a

19   phone conference or other proceeding at which we address

20   that need or concern.  There's no need to sort it out now

21   unless you have suggestions, but I have at least a little

22   bit of discretion and some basis for exercising.

23        MR. CARROLL:  That sounds appropriate, Your

24   Honor.

25        THE COURT:  Very good.

1          MR. MUOIO:  A phone conference sounds great,

2     Your Honor.

3          THE COURT:  Very good.  All right.

4          All right.  Just so that I'm clear, we filed the

5     four informations, you're going to file the four written

6     plea agreements that have been executed and the pleas have

7     entered, we've ordered to at least provisionally seal the

8     attachments to the plea agreements.  Is there anything

9     that I'm overlooking?

10         MR. MUOIO:  I don't think so, Your Honor.

11         THE COURT:  All right.  Again, I want to thank

12    everybody for agreeing to do this in a more efficient, if

13    somewhat cumbersome manner, and I look forward to further

14    proceedings in this case.

15         Thank you all for coming in.  We'll stand in

16    recess.

17         (Whereupon the above matter was adjourned at

18    12:00 o'clock noon.)

19

20

21

22

23

24

25

C E R T I F I C A T E


I, Susan E. Catucci, RMR, Official Court Reporter for the United States District Court for the District of Connecticut, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.



/S/ Susan E. Catucci
_____

Susan E. Catucci, RMR
Official Court Reporter
915 Lafayette Boulevard
Bridgeport, Connecticut  06604
Tel: (917) 703-0761